UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES ARNOLD COX, JR.,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

Case No. C11-416-TSZ-BAT

**REPORT AND RECOMMENDATION**

James Arnold Cox, Jr. seeks review of the denial of his Supplemental Security Income application. He contends that the ALJ erred by (1) rejecting the opinion of his treating physician, (2) improperly evaluating lay witness evidence; (3) rejecting plaintiff's testimony, (4) improperly formulating plaintiff's RFC, and (5) failing to find that plaintiff was limited to sedentary work and therefore disabled as of his 50th birthday. Dkt. 15. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

James Arnold Cox, Jr. is currently 54 years old, has completed the 12th grade, and has owned a construction company, worked in the construction industry as a parts and materials laborer, maintenance worker, and heavy equipment operator. He also worked for utility

REPORT AND RECOMMENDATION - 1

companies as a waste water technician, maintenance worker, and geophysics technician.[1]

In October 2004, plaintiff was admitted to the hospital for treatment of congestive heart failure and atrial fibrillation. Tr. 14. He was subsequently diagnosed with bilateral torn meniscuses. Tr. 189.

On September 18, 2006, plaintiff applied for benefits, alleging disability as of October 4, 2004. Tr. 106. His application was denied initially and on reconsideration. Tr. 69, 74. The ALJ conducted a hearing on April 7, 2009, finding Mr. Cox not disabled. Tr. 9-20. As the Appeals Council denied Mr. Cox's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

> **Step one:** Mr. Cox had not engaged in substantial gainful activity since September 8, 2006. Tr. 14.
>
> **Step two:** Mr. Cox had the following severe impairments: history of congestive heart failure, cardiomyopathy, and right knee meniscus tear. *Id*.
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]
>
> **Residual Functional Capacity:** Mr. Cox had the residual functional capacity to perform light work as follows: He can occasionally lift 20 pounds and can frequently lift 10 pounds. He can stand and/or walk and can sit about six hours in an eight hour day with normal breaks. Due to some limitations with the lower extremities, he can occasionally use the lower extremities to operate foot controls requiring pushing or pulling. Mr. Cox can never climb ladders, ropes, or scaffolding. Mr. Cox can occasionally climb stairs and ramps, balance, kneel, crouch, and crawl. He should not operate hazardous machinery or equipment or work at heights. He should avoid extreme cold and extreme heat, and should avoid working in environments with fumes, odors, dusts, gases, and poor

---

[1] Tr. 67, 106, 125.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

ventilation. Tr. 15-16.

**Step four:** Mr. Cox could not perform his past work. Tr. 19

**Step five:** As there are jobs Mr. Cox can perform, he is not disabled. *Id.*

## DISCUSSION

Plaintiff contends that the ALJ erred in several ways. Because the ALJ relied on her determination of plaintiff's credibility to reject the opinions of the treating physician and the lay witness, the court will first address that credibility determination.

**A.   Plaintiff's Credibility**

Plaintiff contends that the ALJ erred by rejecting his testimony without providing clear and convincing reasons. The ALJ explained,

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The overall record and objective medical evidence do not support the alleged severity of the claimant's symptoms and limitations due to his impairments.

Tr. 16-17.

Once the plaintiff produces medical evidence of an underlying impairment, the Commissioner may not discredit the plaintiff's testimony as to subjective symptoms merely because they are unsupported by objective evidence.[4] Instead, where there is no affirmative evidence showing that the plaintiff is malingering, the Commissioner's reasons for rejecting the plaintiff's testimony must be "clear and convincing."[5] "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

---

[4] *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).
[5] *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (internal quotation omitted).

1 | plaintiff's complaints."[6]  There is no evidence of malingering in this case.

2 |     Plaintiff stated that due to his impairments, he was unable to stand for long periods, and
3 | could not squat, kneel, bend, or climb stairs without help. Tr. 16.  He also indicated that his
4 | knees gave out when he walked, and estimated that he could not walk more than 100 feet before
5 | he had to stop and rest. *Id.*  During the hearing, he complained of ongoing fatigue and explained
6 | that when his knees swelled, he was unable to walk. Tr. 29, 31.  The plaintiff explained that he
7 | lived with a landlord/caretaker who does most of the shopping, cooking, and cleaning, and that
8 | he was no longer able to engage in his former hobbies of riding horses and motorcycles. Tr. 38.

9 |     The ALJ provided three reasons for rejecting plaintiff's testimony.  First, the ALJ found
10 | that despite plaintiff's statement to the contrary, the record did not reflect that a physician had
11 | prescribed the use of a cane or crutches. Tr. 17.  The ALJ also noted that the plaintiff arrived at
12 | the hearing without crutches, explaining that he left his crutch in his vehicle because he was late.
13 | Those facts support the ALJ's conclusion that plaintiff did not require the use of a cane or
14 | crutches to walk.  "In determining credibility, an ALJ may engage in ordinary techniques of
15 | credibility evaluation, such as considering claimant's reputation for truthfulness and
16 | inconsistencies in claimant's testimony."[7]  However, the ALJ did not rely on those facts to
17 | conclude that plaintiff was not a credible witness.  Nor did she conclude that the absence of a
18 | prescription for an ambulation aid translates into an ability to walk or stand for prolonged
19 | periods. In fact, Dr. Sharon Levine, plaintiff's treating physician, noted marked limitations and
20 | recommended a limitation to sedentary work even though she did not prescribe, or mention,
21 | ambulation aids in her records.  Therefore, under the ALJ's own analysis, the fact that plaintiff
22 | does not require the use of crutches does not undermine his overall credibility regarding the

---

[6] *Id.*
[7] *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

severity of his symptoms and his limitations.

Second, the ALJ found that plaintiff's daily activities were inconsistent with the alleged severity of his impairments. Tr. 17. Daily activities that are inconsistent with alleged symptoms are relevant to a credibility determination.[8] In this case, however, the ALJ relied on activities of daily living that are not inconsistent with the severity of plaintiff's impairments. For example, the ALJ offered no explanation regarding why he found that plaintiff's alleged fatigue and limitations with standing and walking were inconsistent with the fact that he could attend to his personal care needs, did not need reminders to do so or to take medication, and could occasionally ride in a car and visit others, none of which requires significant exertion or prolonged standing and walking. Nor are those activities transferable to work skills.[9]

In addition to relying on largely irrelevant activities, the ALJ overstated plaintiff's testimony that he could prepare his own meals, mow his yard, and shop in stores two or three times a month. Tr. 17. In fact, plaintiff testified that when he goes to the grocery store, he "[h]angs onto the shopping cart" like a crutch and can stand for only about 20 minutes before he needs to rest. Tr. 33-34. Similarly, plaintiff explained that he mows the lawn only occasionally, with a self-propelled mower, and can mow for only 5-10 minutes before needing a break because his knees "take a beating out there." Tr. 34; *id.* at 34-35 (explaining that it usually takes him three days to mow the yard even though it is not very large); *id.* at 38 (explaining that his landlord/caretaker typically makes his meals, but he is able to warm up leftovers or prepare soup and a sandwich). Moreover, the fact that a plaintiff can engage in some daily activities,

---

[8] *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).
[9] *See, e.g.*, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (explaining that the ALJ must make "specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.") (internal citation and quotation omitted).

REPORT AND RECOMMENDATION - 5

including "grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."[10] Therefore, the plaintiff's daily activities do not undermine his credibility or reflect skills and abilities that are transferable to the workplace.

Third, the ALJ found that the medical evidence did not support plaintiff's testimony regarding the severity of his limitations. The ALJ noted that a cardiologist wrote that plaintiff had "done well" since his cardiac catheterization in July 2006 and that plaintiff denied symptoms of cardiac dysfunction. Tr. 17, 323. Even if plaintiff's cardiac functioning had improved, however, he undisputedly continued to suffer from congestive heart failure and dilated cardiomyopathy. Tr. 235. Moreover, the ALJ did not explain how, or whether, the cardiac improvement was relevant to the plaintiff's professed inability to stand or walk for extended periods due to knee pain. Instead, the ALJ noted that Dr. Gary Hunter, an orthopedic surgeon, opined that plaintiff was "relatively asymptomatic." Tr. 17. The ALJ took that statement out of context; the full sentence stated, "Currently Mr. Cox states his knee pain is disabling at times, although he is relatively asymptomatic today." Tr. 189. Variations in the intensity of symptoms is typical and does not negate a claimant's credibility.[11] Although the ALJ noted some of Dr. Hunter's findings, he omitted others that support plaintiff's testimony, including the fact that Dr. Hunter diagnosed a torn medial meniscus of the right knee, a torn lateral meniscus of the left knee, and suspect recurrent effusion. Tr. 189. Dr. Hunter recommended "partial medial meniscetomy with debridement of the right knee initially." *Id.* As plaintiff notes, it appears unlikely that the physician would have recommended an unnecessary surgery. The ALJ erred by selectively focusing on only certain aspects of Dr. Hunter's report and disregarding other aspects

---

[10] *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).
[11] SSR 96-7p.

REPORT AND RECOMMENDATION - 6

1  that support a finding of disability.[12]

2      In concluding that plaintiff's testimony was inconsistent with the medical evidence, the
3  ALJ also failed to consider the fact that his testimony was fully consistent with Dr. Levine's
4  finding of "marked" limitations due to his knee condition. It was also consistent with Dr.
5  Levine's findings in June 2008 of knee swelling, heat, and decreased flexion, and with plaintiff's
6  report of incapacitating knee pain at that time. Tr. 380. The ALJ also noted that a May 2007 x-
7  ray was normal, but fails to explain how that undermines plaintiff's credibility, particularly in
8  light of the undisputed MRI findings of bi-lateral torn meniscuses. Therefore, the ALJ erred in
9  concluding that the medical evidence undermined plaintiff's credibility and failed to provide
10 clear and convincing reasons for rejecting his testimony.

11 **B.    Plaintiff's Treating Physician**

12     Plaintiff argues that the ALJ erred in rejecting Dr. Levine's opinions. In July 2005, Dr.
13 Levine opined that plaintiff's congestive heart failure and cardiomyopathy caused marked
14 limitations in the plaintiff's ability to perform one or more basic work related activities and
15 limited the plaintiff to sedentary work. Tr. 200-07. In a May 2006 physical evaluation, Dr.
16 Levine opined that the plaintiff's cardiomyopathy and left meniscus tear caused marked
17 limitations in the plaintiff's ability to perform one or more basic work related activities and
18 limited the plaintiff to sedentary work. Tr. 202, 206.

19     Dr. Levine's opinion was contradicted by the opinion of Dr. Diana Shearer,[13] a non-
20 examining physician who reviewed the record evidence and concluded that plaintiff could

---

[12] *See, e.g.*, *Winans v. Bowen*, 853 F.2d 643 (9th Cir. 1987).

[13] Plaintiff contends that the ALJ erred by crediting the opinion of a non-physician disability evaluator and referring to her as a physician. Tr. 18. However, the error was harmless. Because Dr. Shearer reached the same conclusions, the error did not affect the outcome of the disability determination. *See, e.g.*, *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

REPORT AND RECOMMENDATION - 7

perform light work. Tr. 370-77.  Therefore, the ALJ could reject Dr. Levine's opinion by providing "specific and legitimate reasons that are supported by substantial evidence."[14]  The ALJ rejected Dr. Levine's opinion in part because it was inconsistent with "claimant's own reports of his abilities."  Tr. 18.  Because, as set forth above, the ALJ erred in finding that inconsistency, it is not a legitimate reason to reject Dr. Levine's opinion.

The ALJ also justified her rejection of Dr. Levine's opinions by stating that they were inconsistent with the medical evidence.  As the ALJ noted, plaintiff underwent a Myoview stress test approximately one month after Dr. Levine's second report.  Plaintiff exercised for approximately eight minutes before stopping the test due to fatigue.  Tr. 328.  As a result of the stress test, Dr. Robert Middleton opined that the plaintiff had "fairly good exercise capacity" and normal blood pressure in response to exercise.  Tr. 17, 328.  Both Dr. Middleton's and Dr. Shearer's opinions were based on that objective data, and are therefore substantial evidence regarding the limitations stemming from plaintiff's cardiac impairments.[15]  Plaintiff also argues that his cardiologist, Dr. Kevin Zhou, refused to clear him for knee surgery until after certain tests were performed, but plaintiff was cleared for surgery after those tests occurred.  Dr. Zhou performed a heart catheterization that showed no significant artery disease.  Tr. 17, 325-26.  Dr. Zhou also noted that plaintiff had "done well" since the catheterization and denied symptoms of cardiac dysfunction.  Tr. 17, 323, 405.  Approximately six months after opining that plaintiff was disabled due to his cardiac impairments, Dr. Levine opined that plaintiff had "significant improvement on his most recent cardiac studies."  Tr. 17, 235.  Accordingly, the ALJ cited substantial evidence in rejecting Dr. Levine's opinion that plaintiff was disabled due to his

---

[14] *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).
[15] *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (explaining that when a "nontreating physician's opinion rests on objective medical tests, it must be viewed as substantial evidence.").

REPORT AND RECOMMENDATION - 8

cardiac impairments.

However, the ALJ did not provide sufficient reasons for rejecting Dr. Levine's opinion that plaintiff suffered from "marked" limitations related to his knee condition. There is no indication that the medical evidence related to the plaintiff's improved cardiac condition was relevant to his knee condition. As set forth more fully above regarding plaintiff's credibility, the ALJ erred in relying on an out of context portion of Dr. Hunter's opinion and on an x-ray, despite undisputed MRI findings. Accordingly, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to reject Dr. Levine's opinion that plaintiff's knee impairment caused marked limitations.

**C.     Testimony of Lay Witness Elizabeth Hounsel**

Lay witness Elizabeth Hounsel, plaintiff's roommate, testified that plaintiff performs only very limited and occasional household chores, is often fatigued, frequently uses crutches, and can stand for about 15 minutes to wash dishes or prepare a simple meal. Tr. 56-57; *id.* at 141-49. The ALJ did not consider Ms. Hounsel's testimony, finding that her "statements are largely based on the claimant's self-report to the witness and are not consistent with the medical evidence of record and the claimant's own report of his abilities." Tr. 18. Because the ALJ erred in discounting plaintiff's credibility, she also erred in rejecting the lay witness testimony because it was based on the plaintiff's own reports. Despite the ALJ's finding of an inconsistency, Ms. Hounsel's reports of the plaintiff's activities are consistent with the plaintiff's reports. In addition, the ALJ's assertion that Ms. Hounsel's statements were based on the plaintiff's self-reports is unsupported and inconsistent with the record. Ms. Hounsel testified that she was able to observe the plaintiff, her roommate of approximately four years, on a daily basis. Tr. 54. Although the Commissioner argues that Ms. Hounsel worked full time during the day,

REPORT AND RECOMMENDATION - 9

she testified that she was home every day by 4:00 p.m., and as a "homebody," was able to observe him in the evenings and on weekends. Tr. 54. Neither the law nor common sense requires that a lay witness observe a claimant constantly. Instead, "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition."[16] Finally, the ALJ stated that Ms. Hounsel's testimony was inconsistent with the medical reports, but as set forth above, it was fully consistent with Dr. Levine's reports and other medical evidence regarding plaintiff's knees. Accordingly, the ALJ erred in rejecting Ms. Hounsel's testimony.

**D.     Plaintiff's RFC**

Plaintiff contends that the ALJ erred in assessing his RFC in several ways. First, he argues that the ALJ failed to consider his insomnia and likely sleep apnea. An ALJ is not required to discuss all evidence presented.[17] Instead, the ALJ must discuss the reasons why "significant, probative evidence has been rejected."[18] In 2007, plaintiff underwent a sleep evaluation and the physician concluded that plaintiff "appears to have some symptoms which suggest obstructive sleep apnea" and he "may also be experiencing insomnia as well." Tr. 363. The physician recommended additional testing before recommending treatment options. There is no evidence that plaintiff followed up on the condition. Nor do the physicians opine that the sleep conditions resulted in work-related limitations. Accordingly, the ALJ did not err in failing to include sleep apnea and insomnia in plaintiff's RFC.

Second, plaintiff argues that the ALJ failed to consider plaintiff's professed need to use crutches when outside his home. As explained above, the ALJ did not err in that finding. Third,

---

[16] *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).
[17] *See, e.g.*, *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).
[18] *Id.* at 1395.

REPORT AND RECOMMENDATION - 10

plaintiff contends that the ALJ failed to consider other limitations noted by plaintiff and Ms. Hounsel because the ALJ improperly rejected their testimony. Because the ALJ improperly rejected their testimony, he improperly rejected the limitations they discussed.

**E.     Reevaluation of the Evidence**

Having concluded that the ALJ erred in rejecting the testimony of plaintiff and Ms. Hounsel and portions of Dr. Levine's opinion, the Court must determine the appropriate remedy. Plaintiff contends that the Court should credit the improperly rejected evidence as true and direct the immediate award of benefits.[19] However, application of the credit-as-true rule is not mandatory where there are "'outstanding issues that must be resolved before a proper disability determination can be made.'"[20]

In this case, crediting as true would not result in the immediate payment of benefits. Even if Dr. Levine's opinion regarding plaintiff's knee impairments is credited as true, it does not necessarily establish that plaintiff is limited to only sedentary work as he claims. Rather, Dr. Levine's opinion that plaintiff was limited to sedentary work was based on both his cardiac and knee impairments, and the ALJ properly rejected the opinion as to the severity of the cardiac impairments. Moreover, it is unclear whether crediting the lay witness testimony would result in the immediate payment of benefits. Because the hypothetical to the vocational expert did not address the improperly discredited evidence, remand for further proceedings is warranted.[21] Accordingly, this case will be remanded for further administrative proceedings.

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be

---

[19] *See, e.g., Lingenfelter v. Astrue,* 504 F.3d 1018, 1040-41 (9th Cir. 2007).
[20] *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)).
[21] *See e.g.*, *Vasquez*, 572 F.3d at 597.

REPORT AND RECOMMENDATION - 11

**REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should (1) reevaluate the credibility of plaintiff and Ms. Hounsel, (2) reevaluate Dr. Levine's opinions, (3) conduct a new RFC assessment using all properly considered evidence, (4) consider plaintiff's age, and (5) redetermine if plaintiff is disabled using the updated RFC, if warranted.

Objections, if any to this Report and Recommendation must be filed and served no later than **November 7, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 24th day of October, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge